DORSEY *et al. v.* SULLIVAN.

(In Banc. Feb. 25, 1946.)

[24 So. (2d) 852. No. 36047.]

J. W. Kellum, of Tutwiler, for appellants.

604

**Price, Phillips & Alford,** of Magnolia, for appellee.

**L. A. Smith, Sr., J.,** delivered the opinion of the Court.

Appellee·filed his original bill in the Chancery Court of Franklin County against several defendants, including Joe Dorsey. No process was ever served on some of the defendants, and the process on others was defective. We cite only one instance: "The heirs of Clabe Dorsey who are unknown to your complainant," and the record does not show that they ever appeared, nor was the bill dismissed as to them. However, process was validly served on some others of the defendants.

The suit involved 808 acres, more or less, in Franklin County, approximately half of which was so indefinitely described as probably to make the description legally void.

There was no evidence heard by the trial court whatever; but the original bill charges that the land involved belonged to Townsell Dorsey, dead many years at the time of the suit, who was survived by his heirs at law, Caroline Dorsey, his widow, and Joe Dorsey and Celia Dorsey, his children, and ''That at the time of his death he owned the following described land'' (then describing it).

Caroline and Celia died in Franklin County some years before the trial. It is charged that Caroline died first, so that her interest descended to Joe and Celia and the interest of Celia was purchased by Joe Dorsey, who was charged in the original bill to be the sole owner of the land.

It is averred on the 7th day of August, 1944, appellee obtained an option from Joe Dorsey to purchase the timber upon the lands for a certain sum to be paid later, and that the appellee within the time had tendered Joe Dorsey the agreed purchase price and demanded a deed. Joe Dorsey had agreed to execute a deed, but had not done so. Appellee deposited the money in the bank so that he was ready, willing, and able to pay the agreed purchase price to the said Dorsey who, however, failed or refused to comply with the terms of the option by executing a deed to appellee.

It is averred further that on the 9th day of September, 1916, Caroline Dorsey, the aforesaid widow of Townsell Dorsey, attempted to make a will disposing of the property involved in the suit, which is branded as null and void as it related to the above described land, because it did not name any persons as legatees of it. The will had been admitted to probate.

The title is not deraigned, and the excuse therefor was that the lands were all derived from a common source,

namely, Townsell Dorsey, and for that reason it was not necessary to go beyond him in the chain of title. The prayer of the original bill was that the title of the land be confirmed in Joe Dorsey, and for specific performance by Joe Dorsey of the option agreement, by requiring him to convey the land to appellee; and that the will of Caroline Dorsey be "cancelled as a cloud on the title of Joe Dorsey."

The original bill, so far as the confirmation of title is concerned, must come within the requirements of Section 1314, Code 1942, among which are—"and where the names of persons in interest or their places of residence are unknown and have not been ascertained by diligent inquiry the bill shall so state; and where the name and places of residence of persons in interest are given they shall be made parties defendant; and where the bill shall show that the persons interested are unknown to complainant and that he has made diligent inquiry for their names and could not obtain them, all persons interested may be made defendants by a notice addressed: 'To all persons having or claiming any interest in the following described land, . . . , viz: (Describing the land . . . );' and the notice shall state the nature of the suit." This was not done here. When final decree was entered in this case, the record was not in condition to justify it.

The original bill furthermore seeks to "cancel" a will, already probated. Perhaps the pleader meant to ask for a construction of the will, seeking the effect that it did not convey title to the real estate, on the alleged charge that the land, although set out therein, was devised to no named legatees. Section 473, Code 1942. If so, all the beneficiaries should have been under valid process. Hancock et al. v. Reedy, 181 Miss. 830, 180 So. 81. See also Section 506, Code 1942. However, the prayer was for its cancellation as a cloud upon the title of Joe Dorsey. The procedure as to removing clouds on title is governed by Section 1324 et seq., Code 1942, which sections pro-

vide, among other things, that "any person having the equitable title to land may, in like cases, file a bill to divest the legal title out of the person in whom the same may be vested, and to vest the same in the equitable owner," which, in this case, would be the appellee. The original bill, however, does not deraign the title in "plain and concise language," and its reason for not doing so is insufficient. Section 1325, Code 1942. The bill states that, at the time of his death, Townsell Dorsey "owned" the land. This is not sufficient in a deraignment. The bill was demurrable because it failed to show facts of Townsell Dorsey's title. Thames v. Duvic, 89 Miss. 9, 42 So. 667. The statute makes such a mere declaration as to a complainant being the real owner of the land insufficient unless good and valid reason be given why he does not deraign his title. We think the same is true about the alleged common source of title. A bill of complaint in a proceeding requiring deraignment of title does not state a case against defendants thereto unless the deraignment be sufficient, since complainant must depend upon the strength of his own title and not the weakness of that of his adversary.

The above errors and deficiencies in the original bill are sufficient to point out its faulty character. Perhaps, sensing this, appellee filed an amendment asking conditionally for partition between the heirs of Caroline Dorsey and Joe Dorsey, and that he be adjudicated to have whatever interest in the timber belonged to Joe Dorsey, and that the heirs of Caroline Dorsey be given the part that would have gone to her had she been alive. The amendment concluded with a prayer in the following language: "That the timber be partitioned and be sold for partition and that your complainant be adjudged to be the owner of whatever interest in said timber that the said Joe Dorsey has, and that said timber be sold for partition and the proceeds divided between the owners as their interest may appear."

The appellee did not content himself with the pleadings to which reference has already been made, but filed an amendment to the original bill making seventeen parties defendant, alleging that they claimed some interest in the property involved and denying their interest. The amendment asked for process and adjudication of any rights the new defendants might have in the property.

Not content with these two amendments, appellee filed what he termed a "supplemental bill," making a number of the parties brought in by the amendment last mentioned, parties to the supplemental bill. Process by publication was made for the parties listed in the supplemental bill. It is unnecessary to discuss whether or not the publication was effectual. Joe Dorsey answered and admitted everything that appellee charged in his pleadings, and is not an appellant here.

On February 20, 1945, sixteen of the defendants moved the court for sixty days within which to file an answer, and on the same day the court entered an order sustaining said motion and setting the case for trial on the first Monday of the next term of court at Meadville, which was May 7, 1945, at 10 o'clock A. M. On the same day a decree pro confesso was entered against Cammie Dorsey, Will Dorsey, and Wiley Dorsey, appellants here, and some other parties who were not among the movants for time. However, Wiley was. On February 22, 1945, appellee moved the court for authority to amend his pleadings in order to assert title in Joe Dorsey by adverse possession, which motion was sustained by the court and such amendment filed the same day. No process was had thereon. On the same day decree pro confesso was rendered against Cammie Dorsey, Will Dorsey, and Wiley Dorsey, the appellants, and others, which was two days after the sixty days had been granted certain defendants within which to plead. On the same day that the decree pro confesso was entered what is termed in the record as a final decree thereon, was entered against the same defendants therein. On the 3rd of May some defendants

filed their answer and cross bill, on which there was no process, and demurrer, to appellee's pleadings, but on the 7th day of May, 1945, four days later, without taking any proof, the trial court entered a final decree against certain named defendants. It will be recalled that not all of the defendants were ever in court by any known valid form of process, and some of them were apparently never sought to be put under process before this final decree was entered.

In Griffith's Miss. Chan. Prac., Section 263, the rule is declared to be that "the court will not proceed to a final decree as to any defendant until the cause is triable as to all the defendants," citing Hunt v. Walker, 40 Miss. 590; Kelly v. Brooks, 57 Miss. 225, 227.

In Section 556 of the same work, the rule is that "Where there are several defendants, the cause is not ready for trial as to one, until ready as to all, of the defendants," citing Kelly v. Brooks and Hunt v. Walker, supra.

In spite of the condition of the record, and other manifest defects therein not enumerated, the final decree confirmed the title to the controverted lands in Joe Dorsey; declared the will of Caroline Dorsey null and void for lack of devisees of the land; adjudged title in Joe Dorsey by adverse possession; and enjoined all of the defendants perpetually from asserting any right, claim, or interest in said lands. Strangely, there was no provision in the decree for specific performance of the option agreement between Joe Dorsey and appellee, a primary purpose of the suit.

Only three of the parties defendant appealed from the decree of the trial court, and since, in our judgment, the final decree of the chancery court was wholly ineffectual, and validly accomplished no purpose sought by the appellee against the adverse parties, including the appellants, we are constrained to reverse and remand the cause for them pursuant to their appeal. Section 1156, Code 1942; United States Fidelity & Guaranty Co. v. Rice, 184

Miss. 443, 185 So. 563, 186 So. 620; Bank of Philadelphia v. Posey, 130 Miss. 530, 92 So. 840; Dalton et al. v. Rhodes Motor Co., 153 Miss. 51, 120 So. 821.

So ordered