GULLY, STATE TAX COLLECTOR, *et al. v.* CITY OF BILOXI.

(Division A.   Jan. 11, 1937.   Suggestion of Error Overruled, Feb. 22, 1937.)

[171 So. 698.   No. 32498.]

**S. L. McLaurin,** of Brandon, and **May & Byrd,** of Jackson, for appellants.

**Ford & Ford**, of Pascagoula, for appellee.

786

**Smith, C. J.,** delivered the opinion of the court.

The appellee exhibited an original bill in the court below against the appellant, the State Tax Collector, and the sureties on his official bond, by which it sought to recover, approximately, fourteen thousand dollars alleged to have been unlawfully paid by appellee to the Tax Collector as commissions on municipal taxes paid direct to appellee by the taxpayers without coercion so to do by the Tax Collector, and for the recovery of two other items which will hereinafter appear.

A demurrer to this bill was overruled, and an appeal was granted under section 14, Code of 1930.

The bill is too lengthy for a complete abstract thereof to be set forth, but its allegations, in substance, are as follows:

In 1934 the City owned land purchased by it at tax sales, the period for the redemption of which had expired; that the City executed quitclaim deeds thereto to several named persons, for stated considerations, on which the City paid the Tax Collector twenty per cent. commission; that the Tax Collector did not, in any way, coerce the making of these payments for the land, and could not legally have done so, "but your complainant

would show that when said sales were made, or redemption allowed by the City of Biloxi, that a receipt was issued for the amount of the consideration paid by the purchaser, and said receipt was unlawfully and illegally marked 'Collected at the instance of the State Tax Collector.' ''

In September, 1932, and 1933, the City purchased land at tax sales for the collection of taxes due to the City thereon. In 1934, before the period for the redemption of the land expired, the owners thereof paid the taxes due thereon to the City, receiving receipts therefor marked, ''Collected at the instance of the State Tax Collector,'' on which the city paid the State Tax Collector twenty per cent. commission, although no coercive steps had been taken by him for the collection of the taxes.

In September, 1933, land situated within the City was purchased by individuals at sales thereof for taxes due the City, ''they bidding and paying at said tax sale an amount in excess of the taxes, cost and damages due at the time of said sale. . . . After said sale, and before the expiration of the redemption period, redemptions were made by the owners of said properties or persons lawfully interested therein . . .'' and that ''a substituted receipt was issued by the Tax Collector of the City of Biloxi to said person redeeming, and that same was unlawfully and illegally marked 'Paid at the instance of the State Tax Collector,' and that thereafter a commission of twenty per cent. on the amount paid by the said persons redeeming said properties was paid to the defendant, State Tax Collector,'' although the payment of the taxes was in no way coerced by him.

On September 17, 1934, some of the lands in the City on which the taxes were due were omitted from the sale then made for delinquent taxes, and were thereafter ''by the Tax Collector of Biloxi listed in the tax sales record

with a notation that "taxes on same were to be collected by M. Adams, Deputy State Tax Collector.' "

In November, 1934, taxes on these lands were paid to the City, and "substituted receipts were issued showing a payment of said taxes as in the cases of the redemptions of the lands hereinabove referred to." Twenty per cent. commission was paid by the City to the Tax Collector on the taxes so collected, although he had, in no way, coerced the payment thereof. In 1934, before the time for the sale of land for delinquent taxes, various persons paid the City the taxes due thereon, on which the City paid the Tax Collector twenty per cent. commission although he had, in no way, coerced the payment of said taxes.

In 1934 taxes were paid to the City on other land for the taxes of 1929 to 1933, which the municipal tax collector failed to sell therefor, and receipts were issued by the City, being marked "Collected at the instance of the State Tax Collector," who was paid by the City twenty per cent. commission thereon, although he had, in no way, coerced the payment of such taxes.

"In March, 1934, Myrant Adams, a Deputy State Tax Collector, mailed notices to delinquent tax payers of the City of Biloxi, and that the cost of typing said notices, having the forms printed, postage and stationery, amounted to the sum of $483.92, and that although the said cost and expense of sending out said notices, under the law, should have been borne by the State Tax Collector, that he unlawfully and illegally collected the same from the City of Biloxi. Complainant attaches hereto marked Exhibit L., a statement showing the cost of sending the said notices, the warrant number, the date of issuance in payment thereof, the person to whom said money was paid, the services rendered, and the amount of same; . . . included in said schedule is an item of $1.25 which shows the issuance of warrant No. 59,116, on March 25, 1934, to the Brown Printing Company,

which complainant avers was in payment of a rubber stamp bearing the legend 'Collected at the instance of the State Tax Collector.' "

The bill of complaint then avers that in several instances, in some of which the Tax Collector was legally entitled to his commission, he was paid, in some, an amount in excess thereof, and in others he was paid twice therefor.

In order to obtain the data on which to institute this suit, the City incurred an expense of one thousand five hundred dollars for the audit of its books, for which a recovery is also sought.

The bill then alleges that, "in addition to the commissions which were unlawfully collected and retained by said State Tax Collector, as hereinabove set forth, and in addition to those which were lawfully paid, collected and retained by him, that numerous other payments were made to him by the City of Biloxi, the validity of which is doubtful to your complainant, and, in many instances, the reason for said payments, that is, what the same were for, is unknown to your complainant and to the City of Biloxi, although due demand has been made by the said City of defendant, State Tax Collector, or his lawful Deputy, for information relative to same. And your complainant would further show that, in other instances, commissions were paid to the said State Tax Collector for which commission had theretofore been deducted by the said State Tax Collector in his settlement with the City of Biloxi, or which had already been paid to the said State Tax Collector by the said City of Biloxi, and for all of which your complainant avers that it is entitled to a discovery as to why the said commissions were paid in cases where the same are unknown, and to the refund of same where the same were twice paid by the City of Biloxi to the State Tax Collector. Complainant avers that said items will be more specifically set forth hereinafter."

It appears from the bill that in April, 1934, the City of Biloxi adopted the following order: "Whereas, there is a large amount of taxes past due and delinquent for the year 1933 and preceding years, which taxes the City has been unable to collect in the ordinary course, and, Whereas, the City is in need of such funds to meet outstanding and past due obligations, and, Whereas, it is the opinion of the Board that it would be wise and proper for the State Tax Collector to proceed as he is authorized by law to take steps to collect said taxes. It is, therefore, Ordered, that the State Tax Collector, or his Deputy, be authorized to collect all past due and unpaid taxes due the City of Biloxi, of any kind whatsoever, and he is also authorized to make adjustments, where said adjustments are necessary, and he is hereby authorized by the Board to enforce all powers granted him under chapter 168 of the Mississippi Code of 1930 [section 6984 et seq.], in regard to delinquent taxes."

The bill alleges that this order did not constitute a contract between the City and the Tax Collector, and did not enlarge his powers or add to his right to receive commissions on taxes, the payment of which was coerced by him.

This, the appellant seems to concede, and therefore the order will be left out of view.

Counsel for appellants says that the demurrer should have been sustained for several reasons, among which are the following: (1) That the Tax Collector was legally entitled to the commissions paid him; (2) that the payment thereof by the City is res judicata of the Tax Collector's right thereto; (3) that the City is estopped from collecting the money so paid to the Tax Collector; and (4) that all of the money here sought to be recovered came into the hands of the Tax Collector by virtue of his office, and that, consequently, he must account therefor to the State, and not to the City.

We will pretermit any discussion of the first three of

these contentions, and come, at once, to the fourth, for the reason that we have arrived at the conclusion that no decree for a personal judgment can be here rendered against the State Tax Collector.

Under chapter 168, Code of 1930, the State Tax Collector is a State officer charged with the duty of collecting "all past due and unpaid taxes of any kind whatever, whether of the state, county, municipality, drainage, levee or other taxing district, or any subdivision thereof." Section 6986.

Section 6998 thereof requires him to "settle with the proper officers, and pay over all moneys collected by him as required by law; and he shall make a report to the auditor of public accounts at the end of each fiscal year, giving a full account of all collections by him for the preceding year and of whom and on whose account collected."

The State, counties, and municipalities are not "chargeable with any such fees or expenses on account of any investigation or suit made or instituted by the state tax collector," such fees and expenses being deducted from the money collected by him, section 6999 providing that "The state tax collector shall retain twenty per centum of all amounts collected and paid over by him, and of the purchase money of all lands bid in for the state by him and sold by the land commissioner. Out of the twenty per cent. commission allowed by law to such state tax collector, he shall pay all the expenses incident to the discharge of the duties of his office, and all attorney's fees, and retain the sum of five thousand dollars ($5,000.00) per annum for his salary," etc.

Section 7180 of chapter 172, Code of 1930, provides that "All taxes, fees and penalties that may be hereafter collected for or in the name of the state of Mississippi shall be paid direct to the treasurer of the state, as now provided by law, by the officer charged with the duty of collecting the same, with an itemized statement to be

filed with the state auditor, showing from whom collected and to what account to be credited, and all fees and commissions that may be due to any officer for collecting same shall be paid to such officer by the state treasurer on a warrant issued therefor by the state auditor, and the said warrant shall recite the section of law authorizing the payment thereof."

Under section 6999, the twenty per cent commission received and retained by the State Tax Collector on taxes collected by him, or at his instance, for a municipality, vests not in him personally, but as an officer of the State, and under section 7180 must be paid, by him, to the State Treasurer.

But it is said by the appellee that the commissions here paid to the State Tax Collector had not been earned by, and were unlawfully paid to, him. For the purpose of the argument, we may concede this to be true. Nevertheless, when the commissions were paid to him, it became his duty to account therefor to the State. Section 2915, Code of 1930, provides that "Any officer, state, county, municipal or district, or any other custodian of public funds or property, who shall improperly withhold same from the state or county treasury or other authority whose duty it is to receive same, or who shall fail to turn property over to the proper custodian, or who shall in any wise be in default as to any money or property held by him as a public official in this state, or in any other capacity as custodian of such funds or property, which may come into his hands by virtue of his official position, whether in the proper performance of his official duties, or otherwise, shall be liable on his bond for all cost of collection or recovery of money or property, including in such costs the commissions, if any, of the state tax collector or the attorney-general, and all other costs connected therewith, including interest on funds improperly withheld, for such time as such funds have been withheld, and reasonable rental

and damages where property belonging to the public is so withheld.''

Under this section, it is incumbent on a State officer to account to the State for all money ''which may come into his hands by virtue of his official position, whether in the proper performance of his official duties, or otherwise.''

We are not here concerned with what the appellee's rights would be if the State Tax Collector has failed to pay this money to the State Treasurer, for the bill of complaint does not allege that he has not done so; consequently we must presume that he obeyed the statute and paid the money to the State Treasurer.

The appellee seems to admit that payment to the State Treasurer would absolve the appellants from liability, for it says that, under its prayer for general relief, ''The court, if it should deem proper, could direct the issuance of a warrant on the State Treasurer, in payment of the sums found by it to be due to the appellee.'' No authority is cited therefor, and we know of none.

If the money paid by the appellee for services in, and supplies for, notifying delinquent taxpayers was paid to the State Tax Collector, it also came into his hands by virtue of his official position, but it seems to appear from an exhibit to the bill that it was not paid to him, but direct to the persons to whom it was due.

No authority is cited by the appellee in support of its claim to recover from the appellants money paid by it for the auditing of its books, and we know of none.

The demurrer should have been sustained.

Reversed and remanded.